**FLASTER/GREENBERG P.C.**
Jeffrey A. Cohen, Esquire (No. 009202002)
jeffrey.cohen@flastergreenberg.com
Scott C. Oberlander, Esquire (No. 017202011)
scott.oberlander@flastergreenberg.com
1810 Chapel Avenue West
Cherry Hill, New Jersey 08002
Telephone: (856) 661-1900
*Attorneys for Plaintiffs*

MAR 30 2017

| | |
|---|---|
| SIMRAN SERVICES LLC, MANDEEP OBEROI, MD, NARINDERPAL NARULA and VIKRAM GUPTA,<br><br>Plaintiffs,<br><br>v.<br><br>EVEREST FOODS INC., RAJA JHANJEE, and VICKY VIJ<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY<br><br>CHANCERY DIVISION<br>GENERAL EQUITY<br><br>DOCKET NO.: C-72-17 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF IN THEIR ORDER TO SHOW CAUSE**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTS ..... 3

ARGUMENT ..... 7

I. PLAINTIFFS HAVE ALREADY SUFFERED IRREPARABLE HARM, BUT THEY WILL CONTINUE TO SUFFER FURTHER IRREPARABLE HARM IF JHANJEE AND VIJ ARE NOT IMMEDIATELY RESTRAINED ..... 7

II. PLAINTIFFS HAVE A SETTLED LEGAL BASIS FOR THEIR CLAIMS AND ARE LIKELY TO PREVAIL ON THE MERITS ..... 9

III. PLAINTIFFS WILL SUFFER SUBSTANTIALLY GREATER HARM IF THE RELIEF IS NOT GRANTED THAN JHANJEE AND VIJ WILL SUFFER IF THE RELIEF IS GRANTED ..... 14

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Saturn of Denville New Jersey, LP v. Gen. Motors Corp.*, 2009 WL 1545559 (D.N.J. May 29, 2009) .......... 8

*Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000) .......... 8

**STATE CASES**

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005) .......... 11

*Crowe v. DeGioia*, 90 N.J. 126 (1982) .......... 7, 14

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (N.J. 1997) .......... 10

*McKelvey v. Pierce*, 173 N.J. 26 (2002) .......... 13

*Muellenberg v. Bikon Corp.*, 143 N.J. 168 (1996) .......... 14

*New Jersey Bank v. Azco Realty Co., Inc.*, 148 N.J. Super. 159 (App. Div.), *certif. denied*, 74 N.J. 280 (1977) .......... 9

**STATE STATUTES**

N.J.S.A. § 14A:12-7 (1)(c) .......... 14

New Jersey Business Corporations Act .......... 11, 13

**RULES**

Rule 1:36-3 .......... 8

**PRELIMINARY STATEMENT**

Plaintiffs, Simran Services LLC ("Simran"), Mandeep Oberoi, MD ("Oberoi"), Narinderpal Narula ("Narula") and Vikram Gupta ("Gupta") (collectively, "Plaintiffs"), are aggrieved minority shareholders of Defendant, Everest Foods Inc. ("Everest"). This action is the result of years of oppression, deception and misconduct by Everest's majority shareholders, Raja Jhanjee ("Jhanjee") and Vicky Vij ("Vij"), who currently collectively own a 70% share of Everest.

On May 14, 2013, Plaintiffs, Jhanjee, Vij, and two additional individuals entered into the Everest Foods Inc. Stockholders Agreement ("the Stockholders Agreement"). *See* Stockholders Agreement, attached as Exhibit "A". Everest is an S-Corporation formed primarily "to own and operate a restaurant and bar known as 'Bukhara Grill', located at 217 East 49th Street, New York, New York 10017." *Id.* at §3.

Since the effective date of the Stockholders Agreement, however, Jhanjee and Vij, as Everest's majority shareholders, have consistently taken actions that violate the Stockholders Agreement, lack transparency and serve the best interests only of themselves, to the detriment of Plaintiffs. Jhanjee and Vij's actions that warrant temporary relief from this Court include:

- Providing themselves improper compensation and distributions without notifying Plaintiffs;
- Fabricating employment positions for Jhanjee and Vij's relatives, and paying them salaries without notifying Plaintiffs;
- Knowingly and willfully recording distributions to the minority shareholders on tax forms which they, in fact, never paid to those minority shareholders;
- Failing to provide Plaintiffs with copies of Everest's income tax returns;

- Preventing Plaintiffs from gaining access to additional key financial documents that would permit Simran's members to carry out their responsibilities under the Stockholders Agreement to (1) keep complete and accurate books of account; (2) report Everest's financial condition monthly to additional shareholders, and (3) furnish balance sheets and income statements each year; and
- Arranging for the sale of an additional minority shareholder's 10% interest in Everest to Jhanjee and Vij without undergoing the process detailed in the Stockholders Agreement.

Plaintiffs have for all intents and purposes been squeezed out of the company by the bullying and deceptive practices of the majority shareholders, Jhanjee and Vij and have no recourse other than immediate court intervention. Jhanjee and Vij have continuously ignored Plaintiffs' requests for information concerning the affairs of Everest, instead consistently withholding key information without a sufficient reason to do so. Their self-serving, egregious, and unlawful actions have caused Plaintiffs to suffer immense damages in the form of the lost profits, loss of value of their interest in Everest, and lost future profits.

Plaintiffs face irreparable harm should the Court not immediately issue injunctive relief, as the damages continue to accumulate each day that Jhanjee and Vij run the company, and in the near future, Plaintiffs' significant investments in Everest will be worth nothing. Additionally, the only "hardship" that Jhanjee and Vij would face should the Court issue temporary relief would be their inability to continue to violate many provisions of the Stockholders Agreement for their own benefit.

Jhanjee and Vij are on the verge of eliminating the entire value of Plaintiffs' shares in Everest, siphoning out the company's value through distributions to themselves and their family members and otherwise running the company into the ground. Their failure to properly carry out

their duties and fiduciary responsibilities as Everest's majority shareholders has already endured far too long. Accordingly, Plaintiffs request entry of an Order granting immediate, temporary relief (1) requiring that Jhanjee and Vij turn over all requested financial documents relating to Everest; (2) preventing Jhanjee and Vij from (a) withholding financial documents relating to Everest; (b) paying distributions to themselves without compensating Plaintiffs; (c) fabricating employment positions for their spouses; (d) falsifying tax returns; and (e) purchasing shares from additional shareholders without undergoing the process required under Everest's Stockholders Agreement; and (3) appointing a temporary receiver to run Everest, pending the Court's plenary review of the issues.

## FACTS

On May 14, 2013, Plaintiffs, Jhanjee, Vij, and two other individuals entered into the Stockholders Agreement. *See* Exhibit "A". As detailed in the Stockholders Agreement, Everest was formed primarily "to own and operate a restaurant and bar known as 'Bukhara Grill', located at 217 East 49th Street, New York, New York 10017." *Id.* at §3. While Bukhara Grill has been the primary restaurant operated by Everest (and only restaurant continuously in business) since the execution of the Stockholders Agreement, Everest has opened and closed unsuccessful additional restaurants and other business ventures since May 14, 2013.

Under the Stockholders Agreement, a total of 200 shares of Everest, representing shareholders' proportional ownership interests in Everest, were divided among the parties to this action and other individuals. *Id.* at § 4 and Schedule A. Jhanjee and Vij initially were to each receive 50 membership shares (25% percentage interest), giving them a collective 50% interest in Everest. *Id.* at Schedule A. Simran was to receive 50 membership shares, giving it a 25%

interest in Everest.[1] *Id.* Gupta was to receive 20 membership shares, giving him a 10% interest in Everest. *Id.* Bachan Rawat, a friend of Jhanjee and Vij who has served as head chef of Bukhara Grill since the restaurant opened, was to receive 10 membership shares, giving him a 5% interest in Everest. *Id.* Tirun Gopal ("Gopal") was to initially receive 20 membership shares, giving him a 10% interest in Everest. *Id.*

While the Stockholders Agreement outlines shareholders' initial capital contributions, collectively totaling $50,000 among all shareholders, Jhanjee and Vij represented to Plaintiffs that Everest was worth $1,600,000. Based upon Jhanjee and Vij's representations and the resulting valuation, Oberoi and Narula initially agreed to acquire their collective 25% interest in Everest for $400,000. *See* Proposed Stockholder Surrender Agreement, attached as Exhibit "B".[2] As part of their purchase, they paid $240,000 up-front for 15% of Everest, and tentatively agreed to pay the remaining $160,000 over the subsequent two years. *Id.* Based upon Jhanjee and Vij's subsequent conduct, however, Oberoi and Narula notified Jhanjee and Vij that they did not wish to move forward with its purchase of the additional 10% interest in Everest. Accordingly, Simran's members, Oberoi and Narula, currently own a collective 15% interest in Everest, while Gupta owns a 10% interest in Everest.

Section 7 of the Stockholders Agreement requires the consent of all shareholders for acquisitions of stock in Everest. *See* Exhibit "A" at § 7. In 2014, Jhanjee and Vij purportedly purchased Gopal's shares in Everest, giving them a collective 70% ownership interest in Everest. Upon information and belief, when acquiring Gopal's ownership interest, Jhanjee and Vij failed

---

[1] While the Stockholders Agreement indicates that Simran is the shareholder, because a limited liability company cannot be a shareholder of an S-Corporation, Simran's shares were actually issued to Oberoi and Narula individually, and Oberoi and Narula are considered direct owners of shares of Everest.

[2] The parties never executed the Stock Surrender Agreement.

to acquire the shares using the required procedures in Section 7 of the Stockholders Agreement, which required the consent of the shareholders for any shareholder to sell or transfer an ownership interest, in addition to rights of first refusal on a pro rata basis for all shareholders. *Id.* at § 7.[3]

The above breach of the Stockholders Agreement was only one of many examples of misconduct exhibited by Jhanjee and Vij since the execution of the Agreement. Additionally, since May 14, 2013, Jhanjee and Vij have consistently exhibited a lack of transparency, proper disclosure and honesty towards Plaintiffs, regularly refusing to provide crucial information to Plaintiffs without justification. Plaintiffs have repeatedly requested access to all of Everest's books, accounts, payroll activity, tax returns, and other necessary business information. *See* various emails among shareholders and shareholder meeting minutes, attached as Exhibit "C". Despite Plaintiffs' repeated demands, Jhanjee and Vij have failed to provide Plaintiffs with the requested information, instead refusing to provide the books, accounts, payroll activity, tax returns, and other necessary business information (with the exception of providing tax returns for the years 2013 and 2014, which are attached as Exhibit "E"). Typically, Plaintiffs' requests are met with distraction tactics, responses in a rude and condescending tone towards Plaintiffs, or simply no response. *Id.*

In addition to withholding key business information from Plaintiffs, Jhanjee and Vij inappropriately made key decisions relating to Everest without the consent of Plaintiffs, often rising to the level of fraud. For example, Jhanjee and Vij decided to "hire" their respective wives, Malini Jhanjee and Sushma Vij, as sham Everest employees, designating their positions as "marketing" employees for Bukhara Grill and other since-dissolved Everest ventures. Jhanjee

[3] In their Prayer for Relief, Plaintiffs ultimately request equitable relief declaring that Jhanjee and Vij's acquisition of Gopal's shares of Everest are declared null and void, and that Gopal's shares are to be distributed on a pro rata basis to all shareholders of Everest.

and Vij paid their wives salaries, despite Malini Jhanjee and Sushma Vij not performing any work for Everest. In addition, Jhanjee and Vij never sought nor received the consent of Plaintiffs to hire or compensate Malini Jhanjee and Sushma Vij. Jhanjee and Vij also took out disbursements for themselves without having the right to do so or providing any disbursements to Plaintiffs, who would have been entitled under the Stockholders Agreement to a pro rata share of any disbursements made.

Finally, Everest's Schedule K-1 Forms contain entries showing distributions made to Plaintiffs that Plaintiffs never actually received. *See* portions of K-1 forms provided to Plaintiffs, attached as Exhibit "D". Jhanjee and Vij prepared, or caused to be prepared, the tax returns and Schedule K-1 Forms without disclosing anything to, or seeking input from, Plaintiffs. Jhanjee and Vij prepared Everest's tax returns knowing the information on the Schedule K-1 Forms was inaccurate.

Jhanjee and Vij's negligent and fraudulent acts have caused substantial harm to Everest and its remaining shareholders. For example, as indicated in Everest's tax returns for 2013 and 2014, Everest had gross sales in 2013 of $1,319,309, while the gross sales dropped nearly 90% to $164,250 in 2014. *See* Everest's tax returns of 2013 and 2014, attached as Exhibit "E". Plaintiffs are not aware of Everest's gross sales for 2015, and that speaks to a major issue; Everest's 2015 tax returns are among the documents that Jhanjee and Vij have refused to provide without providing any valid justification. Plaintiffs' investment in Everest continues to diminish in value and will do so as long as Jhanjee and Vij are permitted to run the company.

Because Plaintiffs have repeatedly requested information and documentation relating to Everest, yet Jhanjee and Vij have willfully refused to provide any information or documents, Plaintiffs request the entry of an order requiring Jhanjee and Vij to immediately provide all

financial documents relating to Everest and other key business information that Plaintiffs have requested.

To prevent Jhanjee and Vij from committing further actions detrimental to Plaintiffs, Plaintiffs also request temporary restraints in the form of the appointment of a temporary receiver on an emergent basis to oversee Everest while the litigation is pending. Plaintiffs propose in their Order to Show Cause that Reynold P. Cicalese, CPA, PFS, CGMA, Managing Shareholder of the accounting and advisory firm Alloy, Silverstein, Shapiro, Adams, Mulford, Cicalese, Wilson & Co., serve as Everest's receiver for the remainder of this action. *See* Résumé of Reynold P. Cicalese, attached as Exhibit "F".

## ARGUMENT

The Stockholders Agreement mandates that its validity, interpretation, and enforcement is governed by the laws of the State of New Jersey, without regard to its conflict of laws principles. *Id.* at § 15(d). In granting preliminary injunctive relief in this state, the Court must evaluate whether (1) the movant will suffer irreparable injury absent the granting of relief; (2) the movant has a legal claim that is well settled as a matter of law, and has shown a reasonable probability of success on the merits of the claim; and (3) on balance, the movant will suffer greater hardship if relief is denied than the opposing party will if relief is granted. *Crowe v. DeGioia*, 90 N.J. 126, 132-35 (1982). As set forth below, Plaintiffs have satisfied these standards, and thus respectfully submit that the Court should grant the requested relief immediately to prevent Plaintiffs from suffering more irreparable harm than Jhanjee and Vij's actions have already caused.

### I. PLAINTIFFS HAVE ALREADY SUFFERED IRREPARABLE HARM, BUT THEY WILL CONTINUE TO SUFFER FURTHER IRREPARABLE HARM IF JHANJEE AND VIJ ARE NOT IMMEDIATELY RESTRAINED

In New Jersey, harm is generally considered irreparable if it "cannot be redressed adequately by money damages." *Crowe*, 90 N.J. at 132-33. Additionally, "the fact that the

payment of monies is involved does not automatically preclude a finding of irreparable injury. To this end, . . . [the] court may issue a preliminary injunction to protect a potential future damages remedy, provided that the plaintiff demonstrated that the traditional requirements for obtaining equitable relief had been met. *Saturn of Denville New Jersey, LP v. Gen. Motors Corp.*, 2009 WL 1545559, at *5 (D.N.J. May 29, 2009) (internal citations and quotation marks omitted).[4] In fact, when ruling under New Jersey law, the Third Circuit explicitly determined that irreparable harm has existed when, as here, defendants' actions have dissipated an entity's assets, and any expected payment would not be "readily forthcoming or available". *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 140-41 (3d Cir. 2000).

Here, while Plaintiffs are undeniably entitled to money damages to compensate for the lost profits and significant diminishing of the value of their shares of Everest, money damages alone would not adequately redress the long-term issues dragging down the company. Plaintiffs have invested substantial sums in Everest, collectively owning 25% of a corporation that, as of September 2014, allegedly had an approximate value of $1,600,000. *See* Exhibit "B". Due to the aforementioned actions of Jhanjee and Vij, the value of Plaintiffs' investment in the form of shares of Everest has plummeted, and it could even decrease to zero if Jhanjee and Vij are permitted to continue to be the decision-makers on behalf of Everest. Only the immediate appointment of a receiver to run Everest properly and salvage whatever value remains of the company is acceptable.

Furthermore, as in *Tanimura*, money damages would not serve as an adequate remedy. Despite siphoning funds from Everest over the last few years, Plaintiffs do not believe that Jhanjee and Vij have the required assets to make the payment of the significant damages reflecting the amount Plaintiffs have lost, and stand to lose, due to their actions. Additionally, as

---

[4] A copy of this unpublished opinion is attached as Exhibit "G", as required by Rule 1:36-3.

minority shareholders, Plaintiffs have the right to ensure that Everest is being run properly, and damages alone would not alleviate the issue of Jhanjee and Vij making decisions not in the best interest of the entire company. The appointment of a receiver through a temporary restraining order and preliminary injunction would alleviate a large portion of the problems currently facing Everest.

Jhanjee and Vij's self-serving tactics, including their longstanding efforts to enrich themselves financially to the detriment of Everest's minority shareholders, must end. Every day that passes without injunctive relief is another day that Jhanjee and Vij have free reign to run Everest into the ground while setting aside money from the company for themselves and their family members. Jhanjee and Vij have proven that they are incapable of properly and lawfully controlling Everest. While money damages would provide temporary relief, only equitable relief consisting of (1) Jhanjee and Vij being required to release all requested financial information to Plaintiffs; and (2) the appointment of a receiver to run Everest, would prevent Plaintiffs from suffering grave irreparable harm.

## II. PLAINTIFFS HAVE A SETTLED LEGAL BASIS FOR THEIR CLAIMS AND ARE LIKELY TO PREVAIL ON THE MERITS

In addition to suffering clear irreparable harm should the Court not issue the temporary relief that Plaintiffs request, Plaintiffs are ultimately likely to prevail on the merits of their claims against Jhanjee and Vij. Plaintiffs' right to the remedies they seek is well settled based on the Court Rules and the inherent power of this Court to grant injunctive relief and to otherwise fashion remedies for a party aggrieved by the effects of a party acting in bad faith. *See, e.g., New Jersey Bank v. Azco Realty Co., Inc.*, 148 N.J. Super. 159, 166 (App. Div.), *certif. denied*, 74 N.J. 280 (1977) (applying unclean hands doctrine to a request for equitable relief). Plaintiffs' claims

also have a high likelihood of success upon the Court's ultimate adjudication of the claims of their Verified Complaint.

Other than Count One, in which Plaintiffs bring their claim for equitable relief now before the Court, Plaintiffs have alleged causes of action for fraud, conspiracy to commit fraud, breach of fiduciary duty, and oppression of shareholder rights. Plaintiffs compellingly meet the standard for each of these claims.

First, in New Jersey, the elements of fraud include "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. 1997). Plaintiffs' Verified Complaint and attached exhibits demonstrate, and discovery will further prove, a pattern of deceptive, vengeful conduct on the part of Jhanjee and Vij. The fraud perpetrated by Jhanjee and Vij consisted of providing themselves and their relatives with improper distributions, falsifying tax returns, making decisions for Everest without the consent of the remaining shareholders, and preventing Plaintiffs from accessing Everest's key financial documents – likely because those documents demonstrate the improper payments that Jhanjee and Vij have made to themselves and their families. Inherently, Jhanjee and Vij knowing made each of the representations identified above, and Plaintiffs detrimentally relied upon Jhanjee and Vij's misrepresentations when substantially investing in Everest. As a direct and proximate result, they have suffered substantial damages, including (1) the loss of their investment money; (2) the loss of profits and interest that could have been earned if Jhanjee and Vij had not acted in violation of the Stockholders Agreement; (3) damages for improper tax liability imposed upon

Plaintiffs due to the fraud committed; and (4) the loss of future profits. This is a prima facie example of fraud.

Not only did Jhanjee and Vij each commit fraud, but they did so though a civil conspiracy, which Plaintiffs assert in Count Three of their Verified Complaint. "In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Morgan v. Union Cnty. Bd. Of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *certif. denied*, 135 N.J. 468 (N.J. 1994)).

Here, Jhanjee and Vij clearly reached an agreement to commit the above-described transgressions. All actions taken have benefited the two of them, conversely harming Plaintiffs. Jhanjee and Vij clearly decided that they would use their collective majority interest to freeze out Plaintiffs from making any important decisions and earning returns on their investments, violating various provisions of the Stockholders Agreement along the way (in addition to New Jersey Business Corporations Act, as discussed below). Jhanjee and Vij reaching an agreement to commit the fraud outlined above gives rise to an independent civil conspiracy claim, which has a high likelihood of success on the merits.

The Court should find a similar likelihood of success at this stage concerning Count Four of Plaintiffs' Verified Complaint, in which they allege breach of contract. Jhanjee and Vij, like the remaining shareholders of Everest, accepted all obligations of the Stockholders Agreement when they executed the document. *See* Exhibit "A". They have continuously violated the contract, however, by

(a) Providing themselves improper compensation and distributions, in violation of §§ 4 (f) and (g);

(b) Fabricating employment positions for their relatives and paying them salaries, without notifying the remaining shareholders, in violation of § 4 (j);

(c) Falsifying tax returns and failing to provide the remaining shareholders with copies of Everest's federal, state, and local income tax returns, in violation of § 6 (f);

(d) Preventing Plaintiffs from gaining access to key financial documents that would permit Simran's members to carry out their duties under § 6 (b)-(d); and

(e) Arranging for the sale of Gopal's shares of Everest to Jhanjee and Vij without undergoing the process described in § 7.

As discussed, these breaches have caused significant damages to Plaintiffs, including the loss of (1) their investment money; (2) profits and interest that could have been earned if Jhanjee and Vij had not acted in violation of the Stockholders Agreement; and (3) future profits. Plaintiffs' claim for breach of contract is clearly evident.

Count Five of the Verified Complaint contains a claim for breach of fiduciary duty. New Jersey Courts have determined that

> The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. . . The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship.

*McKelvey v. Pierce*, 173 N.J. 26, 57 (2002) (quoting *F.G. v. MacDonell*, 150 N.J. 550, 563-64 (1997)).

As majority shareholders, Jhanjee and Vij unequivocally have a fiduciary duty to Everest and the remaining shareholders, including Plaintiffs, and have had such a duty since the execution of the Stockholders Agreement on May 14, 2013. As outlined in the Stockholders Agreement, Plaintiffs delegated discretionary authority to Jhanjee and Vij to make certain decisions on behalf of Everest. Jhanjee and Vij were under a duty to act in the best interests of all shareholders of Everest, including Plaintiffs, within the scope of their positions as majority shareholders.

Rather than carry out their duties honorably, Jhanjee and Vij have breached their fiduciary duties as majority shareholders by consistently failing to carry out their responsibilities under the Stockholders Agreement. As majority shareholders, they are required to act in the best interests of Everest as a whole, yet have done the opposite. There is no acceptable excuse for refusing to even complete simple tasks such as providing requested documents to Plaintiffs so Simran's members could carry out their own responsibilities. This alone would constitute a breach of fiduciary duty, but Jhanjee and Vij have also committed more serious transgressions of fabricating employment positions, making improper distributions to themselves, and falsifying tax returns. The probability that Plaintiffs will succeed in their breach of fiduciary duty claim against Jhanjee and Vij is extremely high.

Finally, Plaintiffs have asserted a claim under the oppressed minority shareholder provisions of the New Jersey Business Corporations Act. The Act states that this Court

> may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock as provided below, or enter a judgment dissolving the corporation, upon proof that . . . [i]n the case of a corporation having 25 or less shareholders, the directors

> or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees

N.J.S.A. § 14A:12-7 (1)(c). "Ordinarily, oppression by shareholders is clearly shown when they have awarded themselves excessive compensation, furnished inadequate dividends, or misapplied and wasted corporate funds." *Muellenberg v. Bikon Corp.*, 143 N.J. 168, 180 (1996).

As discussed, as majority shareholders of Everest, Jhanjee and Vij have certainly "acted fraudulently or illegally," "mismanaged the corporation," "abused their authority as officers or directors," and "acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders". They have awarded themselves excessive compensation and misapplied/wasted corporate funds, directly harming Plaintiffs. Plaintiffs have requested that the Court appoint a temporary receiver while this action is pending, but they are also highly likely to obtain more permanent relief through their ultimate claim for oppression of minority shareholder rights. In sum, Jhanjee and Vij's actions fly in the face of their obligations under the Stockholders Agreement, and as a result, Plaintiffs are highly likely to prevail on the merits of each of the six counts of their Verified Complaint.

## III. PLAINTIFFS WILL SUFFER SUBSTANTIALLY GREATER HARM IF THE RELIEF IS NOT GRANTED THAN JHANJEE AND VIJ WILL SUFFER IF THE RELIEF IS GRANTED

An applicant for injunctive relief must demonstrate that the equities favor granting relief, and that the non-movant will suffer less harm if the relief is granted than the movant would if the injunctive relief is denied. *See Crowe*, 90 N.J. at 134. In *Crowe*, the movant would have been "devastat[ed]" without the relief, while the non-movant would have suffered "relatively inconsequential expense." *Id.* Such is the case in this action.

Plaintiffs have discussed at length in this memorandum of law the hardships they would face should the Court decline to grant the relief they request. Their ownership interest in Everest would decrease in value significantly more than it already has, as Jhanjee and Vij would face no barriers to continuing to divert Everest's funds to the bank accounts of themselves and their relatives, while continuing to make company decisions without input from Plaintiffs. On the other hand, Jhanjee and Vij do not stand to suffer any harm if the relief is granted; instead, they would only suffer the "hardship" of no longer being permitted to provide themselves and their relatives with improper distributions, falsify tax returns, make decisions for Everest without the consent of the remaining shareholders, or prevent Plaintiffs from accessing Everest's financial information that evidences the fraud that Jhanjee and Vij have committed. Finally, the Court granting the relief requested by Plaintiffs would not be detrimental to the lone remaining shareholder, Bachan Rawat, as his minority interest in the company would be best served by his shares no longer decreasing in value – which can only be achieved through an Order preventing the majority shareholders from continuing to engage in their actions harming Everest. It is therefore respectfully submitted that the equities substantially favor the granting of the relief requested, and all three requirements for a temporary restraining order, and ultimately a preliminary injunction, are satisfied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Application for a Temporary Restraining Order in their Order to Show Cause and issue temporary, preliminary, and ultimately permanent relief against Jhanjee and Vij.

Respectfully submitted,

Date: March 29, 2017

**FLASTER/GREENBERG P.C.**

By: ______________________
Jeffrey A. Cohen, Esquire
Scott C. Oberlander, Esquire
*Attorneys for Plaintiffs*